UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE SANDERSON,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　Case No. 13-10094

CITY OF FARMINGTON HILLS,　　　　　　　　　　　HON. AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 6)**

**I. INTRODUCTION**

This is an action under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, *et seq.* In January of 2010 Plaintiff Nicole Sanderson (the "Plaintiff") was hired by Defendant City of Farmington Hills (the "Defendant") as a part-time building custodian at the Costic Center. Plaintiff is a member of the National Guard; in November of 2010, she deployed to Afghanistan. Upon her return in December of 2011, Plaintiff claims that Defendant refused to reemploy her in violation of the USERRA. Now before the Court is Defendant's motion for summary judgment (Doc. 6). For the reasons that follow, the motion is DENIED.

**II. BACKGROUND**

The parties have filed a joint statement of material facts. *See* (Doc. 10). The following scenario is taken from the statement.

Plaintiff began employment for Defendant as a part-time building custodian at the Costic Center (the "center") in January of 2010. Her duties included cleaning the facility.

During the period Plaintiff was employed at the center, she was a member of the National Guard. On October 11, 2010, Plaintiff submitted to Defendant a leave request form for military leave beginning October 28, 2010. Her leave request stated that she was deploying to Afghanistan on November 2, 2010. Plaintiff was scheduled to return to work on December 1, 2011.

Plaintiff called the center on October 27, 2011, after returning from Afghanistan. Plaintiff does not know who she talked to. She informed the person she called to let Jeff Hotchkiss, Plaintiff's supervisor, know that she had returned from Afghanistan and could be "put back on the schedule."

Hotchkiss returned Plaintiff's phone call on November 9, 2011. He told Plaintiff that there was a position available for her and to come see him at the end of the month to discuss her availability, work schedule, and any time-off requests.

Plaintiff says that, on November 23, 2011, she called the center to speak with Hotchkiss regarding her schedule. Plaintiff says she was directed to leave a message for Hotchkiss. She left a message stating that she was calling to "figure out about the schedule." Plaintiff also contends that she visited the center on multiple occasions attempting to speak with Hotchkiss. Hotchkiss did not return her phone call or otherwise get in touch with her. When Plaintiff went to the center to check the December 1, 2011 schedule, she learned that she had not been placed on the schedule.

Hotchkiss denies that he received any messages from Plaintiff after their November 9 conversation. Because Hotchkiss says he did not hear from Plaintiff, he did not put her on the December 1, 2011 schedule.

Plaintiff says that she tried to get in touch with Hotchkiss multiple times after leaving a voice mail message for him on November 23, 2011. She was not able to get in touch with him. Because Plaintiff was not able to get in touch with Hotchkiss, and because she was not placed on the December 1, 2011 schedule, she filed for unemployment benefits on December 8, 2011.

After Defendant learned from the State of Michigan that Plaintiff had filed for unemployment benefits, Defendant informed the State on December 22, 2011 that it had work available for Plaintiff. Defendant informed the State that Plaintiff had been placed on the December, 2011 schedule, but had been asked to be taken off the schedule because of psychological reasons.

On April 23, 2012, Plaintiff visited the center to have an unemployment form signed. Plaintiff talked to Dave Boyer (Boyer), Defendant's Director of Special Services. Boyer informed Plaintiff that he could not sign the form for her and that she needed to go to the human resources department. He further informed Plaintiff that the city had part-time work available.

Hotchkiss says that, prior to April 23, he was unaware that Plaintiff had ever sought to get in touch with him. On April 23, Boyer told Hotchkiss that Plaintiff visited the center and sought to have an unemployment form signed.

On the same day, April 23, 2012, Plaintiff went to the human resources department and spoke with Jan Hooyberg (Hooyberg), a senior analyst. According to Plaintiff, because

she dealt exclusively with Hotchkiss in the past, this was the first time that she was aware that Defendant had a human resources department, and the first time that she was aware where the department was located.

During Plaintiff's visit to the human resources department, Hooyberg initiated a phone conference with herself, Plaintiff, Hotchkiss, and Ellen Schnackel (Schnakel), Hotchkiss's supervisor. Hooyberg asked Hotchkiss and Schnackel whether they had work available for Plaintiff. They informed Hooyberg that they had part-time custodial work available for Plaintiff, the same work she performed prior to leaving to Afghanistan. Hotchkiss and Schnakel say that they told Hooyberg that, if Plaintiff wanted to be added to the work schedule, she should come to the center that day to discuss her availability and time-off requests. Plaintiff disagrees. She says that, during the conference call, she requested to be placed on the May, 2012 work schedule, and that no one mentioned that she had to first return to the center in person to discuss her work scheduling.

Plaintiff was not placed on the May, 2012 schedule. Because she was not placed in the monthly schedule, she assumed that she had been terminated and that defendant did not intend to make any jobs available for her.

The record does not contain any evidence showing that Plaintiff received any formal paperwork from Defendant offering her a position on her return from Afghanistan or otherwise informing her that a position was available for her.

### III. STANDARD OF REVIEW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is,

4

pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. DISCUSSION

Defendant seeks summary judgment arguing that Plaintiff has not satisfied the requirements of the USERRA. First, Defendant contends that Plaintiff did not "report to" Defendant, as defined by the USERRA. Second, Defendant says that Plaintiff did not submit an application for reemployment to Defendant. Thus, Defendant argues that Plaintiff's failure to report to work as requested, or to submit an application for reemployment, precludes her claim. Finally, Defendant contends that even if it failed to reemploy Plaintiff, Plaintiff's claim fails as a matter of law because the USERRA requires her to show that her military service was a motivating factor in Defendant's decision not to reemploy her.

Plaintiff responds[1] that she made multiple attempts to report to Defendant for reemployment. Further, Plaintiff says that the USERRA does not require the submission of an "application" for reemployment if the employee "reports to" the employer for reemployment. Finally, Plaintiff disagrees that the USERRA requires proof of discrimination

---

[1] Plaintiff's response brief does not comply with type size requirements in E.D. Mich. LR 5.1(a)(3). The recent changes to the local rules provide that, "[e]xcept for standard preprinted forms that are in general use, type size of all text and footnotes must be no smaller than 10-1/2 characters per inch (non-proportional) or 14 point (proportional)."

based on military service. Plaintiff contends that summary judgment is, therefore, unwarranted.

**A. The Uniformed Services Employment and Reemployment Rights Act**

One key purpose of the USERRA is that "it guarantees returning veterans a right of reemployment after military service." *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 439 (6th Cir. 2008) (citing 38 U.S.C. § 4312) (*Petty I*). In addition, the act "prescribes the position to which such veterans are entitled upon their return." *Id.* (citing 38 U.S.C. § 4313). The parties dispute whether Plaintiff has met the requirements for reemployment under 38 U.S.C. § 4312 of the USERRA.

Quoting *Clegg v. Arkansas Department of Correction*, 496 F.3d 922, 930 (8th Cir. 2007), the Sixth Circuit explained section 4312 of the USERRA:

> Section 4312 protects service members at the instant of seeking reemployment, entitling the service member to reemployment in either the position she would have been in had she not left for military service "or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A) (defining rights set forth in § 4312, which entitles a person to be rehired upon return from military service).

*Id.* at 439–40 (quoting *Clegg*, 496 F.3d at 930).

The statute provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the remployment rights and benefits and other employment benefits" if "(1) the person . . . has given advance written or verbal notice of such service to . . . [his or her] employer"; "(2) the cumulative length of the absence . . . by reason of service in the uniformed services does not exceed five years"; and "(3) except as provided in subsection (f), the person reports to,

or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e)." 38 U.S.C. § 4312(a)(1)–(3). Subsection (e) requires "a person whose period of service in the uniformed services was for more than 180 days," to "submit[] an application for reemployment with the employer not later than 90 days after the completion of the period of service." 38 U.S.C. § 4312(e)(1)(D).

As the Sixth Circuit has explained, "[b]ecause USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Petty I*, 538 F.3d at 439 (citation and quotation marks omitted).

### B. This Case

Here, there are material factual disputes rendering summary judgment inappropriate.

#### 1. There are genuine issues of material fact whether Plaintiff "reported to" the center for reemployment

Particularly, there are material factual issues whether Plaintiff "reported to" the center for reemployment. Broadly construing the statute in favor of Plaintiff, see *Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1132 (W.D. Mich. 2000), as the Court must, there is ample testimony to create a genuine issue of material fact whether Plaintiff "reported to" the center for reemployment.

Both parties agree that the statute does not define "report to." However, accepting Defendant's definition from the *Random House Webster's College Dictionary 2001* that "report to" means "to present oneself as ordered" or "to report for duty," and drawing all reasonable inferences in favor of Plaintiff, there are material factual issues whether Plaintiff reported for reemployment.

Plaintiff testified at her deposition that she called a representative of the Defendant on October 27, 2011 to let Hotchkiss know that she returned from Aghanistan. On November 9, 2011, Hotchkiss returned Plaintiff's phone call. During the phone call, Hotchkiss welcomed Plaintiff home and made it clear that a position was available for her. (Doc. 9-2 at 8, Pl's. Dep.). Plaintiff testified at her deposition that Hotchkiss told her to call him back two days prior to the December, 2011 schedule being posted so that he could determine Plaintiff's availability. (*Id.*).

Between the November 9 phone call and the posting of the December, 2011 schedule, Plaintiff testified that she tried to call Hotchkiss and went to the center on multiple occasions. (*Id.* at 9–12). Plaintiff could not get in touch with Hotchkiss. Plaintiff also testified that, after discovering that she was not on the December, 2011 schedule, she again tried to contact Hotchkiss but was unsuccessful. In addition, Plaintiff reported up the chain of command in April of 2012. She testified that, in a conference call with Hooyberg, Hotchkiss, and Schnakel, she was told that she would be placed on the May, 2012 schedule. However, just as was the case in December, Plaintiff was not placed on the schedule.

Defendant contends that Plaintiff did not see Hotchkiss as instructed. Hotchkiss testified at his deposition that he never heard from Plaintiff regarding her availability, and, therefore, did not place her on the December or May schedules. However, the parties have different stories which, at this stage, cannot be resolved on summary judgment. Determining what occurred requires weighing the credibility of testimony. This is reserved to the finder of fact.

Drawing all reasonable inferences in favor of Plaintiff, the testimony supports the view that she attempted to get in touch with Hotchkiss on multiple occasions by telephone and in person. She did not attempt to follow up with anyone other than Hotchkiss because she had only dealt with Hotchkiss her entire time at the center. Moreover, the fact that Defendant did not put in writing any offer of employment supports Plaintiff's position.

Not only does Plaintiff's testimony create a genuine issue of material fact, but Hotchkiss's contention that he never heard from Plaintiff is contradicted by Defendant's response to the State of Michigan Unemployment Agency regarding Plaintiff's application for unemployment benefits. In a letter to the State, Defendant's Sr. Human Resources Analyst Mary LaPorte (LaPorte) informed the State as follows:

> Ms. Sanderson returned from active military duty approximately November 1, 2011. She contacted the City to return to her job and was put on the work schedule for December. Several days prior to her scheduled return date she contacted her supervisor stating that she did not feel "mentally capable" to return to work.

(Doc. 6-7 at 2, Protest Letter). This letter undermines Hotchkiss's position that he never placed Plaintiff on the schedule because he did not hear back from her about her availability.

### 2. Plaintiff was not required to submit an application for reemployment

Defendant's argument that Plaintiff was required to submit an application for reemployment, in addition to "reporting to" the center, is unpersuasive. The statute explicitly states that a person shall be entitled to reemployment rights and benefits if, among other things, the person "reports to, *or* submits an application for reemployment. . . ." 38 U.S.C. § 4312(a)(3) (emphasis added). The Legislature's use of the word "or"

10

signifies that reemployment rights and benefits can be triggered by one of two ways: (1) reporting to the employer; or (2) submitting an application for reemployment. Here, Plaintiff contends that she reported to the center for reemployment. If a jury finds this as true, Plaintiff was not also required to submit an application for reemployment.

### 3. Plaintiff is not required to show discrimination based on military service

Defendant relies on *Curby v. Archon*, 216 F.3d 549, 557 (6th Cir. 2000) to argue that Plaintiff has the burden of showing that her military service was a motivating factor in Defendant's decision not to reemploy her under section 4311 of the USERRA statute. This argument and reliance on *Curby* was foreclosed by the Sixth Circuit in *Petty I*, *supra*. In *Petty I*, the Sixth Circuit noted the confusion regarding the interplay between sections 4311 and 4312 of the USERRA statute,[2] and clarified that "[s]ection 4311 applies *after* reemployment has occurred and 'prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed.'" *Petty I*, 538 F.3d at 440 (quoting *Clegg*, 496 F.3d at 930) (internal citation omitted) (emphasis added). Here, Plaintiff was not reemployed. Thus, the requirement that a plaintiff show discrimination based on military service under section 4311, which applies *after* reemployment, was not triggered.

---

[2] Specifically, the Sixth Circuit noted that *Curby* reached an opposite conclusion than *Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1133–39 (W.D. Mich. 2000).

11

## V. CONCLUSION

For the reasons stated above, summary judgment was denied.

SO ORDERED.

                                         S/Avern Cohn
                                         AVERN COHN
                                         UNITED STATES DISTRICT JUDGE

Dated: September 17, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 17, 2013, by electronic and/or ordinary mail.

                                         S/Sakne Chami
                                         Case Manager, (313) 234-5160